UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

JASON PAYNE,                          )
                                      )
        Plaintiff,                    )
                                      )
        v.                            )          Civil Action No. 21-3077 (JEB)
                                      )
JOSEPH R. BIDEN, Jr.,                 )
President of the United States, *et al.*, )
                                      )
        Defendants.                   )
_____)


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**


MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

PAUL CIRINO, D.C. Bar #1684555
Assistant United States Attorney
Civil Division
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C.  20530
Telephone: (202) 252-2529
paul.cirino@usdoj.gov

*Counsel for Defendants*

Dated:  February 25, 2022

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

INTRODUCTION ....................................................................................................................... 1

STATUTORY AND REGULATORY FRAMEWORK ............................................................. 3

FACTUAL BACKGROUND AND PRIOR PROCEEDINGS ................................................. 7

I.       ALLEGATIONS IN THE COMPLAINT. ....................................................................... 7

II.      PROCEDURAL HISTORY............................................................................................... 7

APPLICABLE LEGAL STANDARDS ................................................................................... 9

I.       RULE 12(b)(1) – LACK OF SUBJECT-MATTER JURISDICTION. ............................ 9

II.      RULE 12(b)(6) – FAILURE TO STATE A CLAIM. ...................................................... 9

III.     RULE 56 – SUMMARY JUDGMENT ......................................................................... 10

ARGUMENT ........................................................................................................................... 12

I.       THE COURT LACKS SUBJECT MATTER JURISDICTION OVER
         PLAINTIFF'S CLAIMS. .............................................................................................. 12

         A.    Plaintiff's Claims Are Barred by the Civil Service Reform Act. ........................... 12

         B.    Plaintiff's Claims Against the Task Force and Its Members Cannot Redress
               His Injuries. .......................................................................................................... 17

II.      PLAINTIFF'S CLAIMS SHOULD BE DISMISSED ON THE MERITS AND
         HE IS NOT ENTITLED TO SUMMARY JUDGMENT................................................. 18

         A.    The President Has Constitutional and Statutory Authority to Condition
               Federal Employment on Vaccination. ................................................................... 18

         B.    The Challenged Vaccine Requirement Does Not Infringe on Plaintiff's
               Constitutional Rights. ........................................................................................... 23

               1.    Plaintiff's Argument That the Executive Order Violates His
                     Constitutional Rights Is Meritless. ............................................................... 23

               2.    Plaintiff's Argument Concerning the "Unconstitutional Condition
                     Doctrine" Lacks Merit. ................................................................................ 28

CONCLUSION........................................................................................................................ 30

## TABLE OF AUTHORITES

**Cases**                                                                   **Page(s)**

*Abulhawa v. Dep't of Treasury*,
    239 F. Supp. 3d 24 (D.D.C. 2017) ............................................................... 17

*Altschuld v. Raimondo*,
    Civ. A. No. 21-2779 (TSC), 2021 WL 6113563 (D.D.C. Nov. 8, 2021) ............................. 29

*American Fed'n of Gov't Emps. v. Hoffman*,
    543 F.2d 930 (D.C. Cir. 1976) ....................................................... 22, 23

*American Fed'n of Gov't Emps. v. Secretary of the Air Force*,
    716 F.3d 633 (D.C. Cir. 2013) ............................................................... 15

*American Fed'n of Gov't Emps. v. Trump*,
    929 F.3d 748 (D.C. Cir. 2019) ............................................................... 16

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................. 10-11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................. 9-10

*Atkins v. Salazar*,
    677 F.3d 667 (5th Cir. 2011) ............................................................... 23

*Bauer v. Summey*,
    Civ. A. No. 21-2952, 2021 WL 4900922 (D.S.C. Oct. 21, 2021) ........................................ 25

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007),
    550 U.S. 544 (2007) .................................................................... 9

*Bennett v. SEC*,
    844 F.3d 174 (4th Cir. 2016) ............................................................... 13

*Biden v. Missouri*,
    142 S. Ct. 647 (2022) ............................................................. 24-25, 28

*Brass v. Biden*,
    Civ. A. No. 21-2778, 2021 WL 6498143 (D. Colo. Dec. 23, 2021),
    *report and recommendation adopted*, 2022 WL 136093 (D. Colo. Jan. 14, 2022) ............... 20

*Brnovich v. Biden*,
    Civ. A. No. 21-1568, 2022 WL 252396 (D. Ariz. Jan. 27, 2022) ........................................ 20

*Byrd v. Reno*,
    180 F.3d 298 (D.C. Cir. 1999) ............................................................... 26

*Celotex Corp. v. Catrett,*
 477 U.S. 317 (1986) ............................................................................................... 10-11

*Church v. Biden,*
 Civ. A. No. 21-2815 (CKK), 2021 WL 5179215 (D.D.C. Nov. 8, 2021) ............................ 29

*Clarry v. United States*,
 85 F.3d 1041 (2d Cir. 1996) ................................................................................... 19

*Cruzan ex rel. Cruzan v. Director, Missouri Dep't of Health*,
 497 U.S. 261 (1990) ............................................................................................ 26-27

*David v. Dist. of Columbia*,
 558 F.3d 542 (D.C. Cir. 2009) ............................................................................... 11

*Dep't of the Navy v. Egan*,
 484 U.S. 518 (1988) ............................................................................................ 20-21

*Diamond v. Atwood*,
 43 F.3d 1538 (D.C. Cir. 1995) ............................................................................... 10

*DiLuigi v. Kafkalas*,
 584 F.2d 22 (3d Cir. 1978) ................................................................................... 19

*Dixon v. De Blasio*,
 Civ. A. No. 21-5090, 2021 WL 4750187 (E.D.N.Y. Oct. 12, 2021) ................................ 25

*Doe v. Zucker*,
 520 F. Supp. 3d 217 (N.D.N.Y. 2021) ..................................................................... 25

*EEOC v. St. Francis Xavier Parochial Sch.*,
 117 F.3d 621 (D.C. Cir. 1997) ............................................................................... 10

*Elgin v. Dep't of the Treasury*,
 567 U.S. 1 (2012) ........................................................................................ 13, 15, 16

*Feds for Medical Freedom v. Biden*,
 Civ. A. No. 3:21-0356, 2022 WL 188329 (S.D. Tex. Jan. 21, 2022) ............................. 8, 20

*Fleming v. Spencer*,
 718 F. App'x 185 (4th Cir. 2018) (per curiam) ....................................................... 12, 13

*Foley v. Biden*,
 Civ. A. No. 21-1098 (N.D. Tex. Oct. 6, 2021) ......................................................... 17

*Franklin v. Massachusetts*,
 505 U.S. 788 (1992) ............................................................................................ 17

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.*,
 561 U.S. 477 (2010) ........................................................................................ 18, 20

*Friedman v. Schwellenbach*,
    159 F.2d 22 (D.C. Cir. 1946) ................................................................ 19

*Giesler v. MSPB*,
    686 F.2d 844 (10th Cir. 1982) ............................................................. 22

*Hall v. Clinton*,
    235 F.3d 202 (4th Cir. 2000) .............................................................. 16

*Hawkins v. Freeman*,
    195 F.3d 732 (4th Cir. 1999) .............................................................. 25

*Heller v. Doe ex rel. Doe*,
    509 U.S. 312 (1993) ........................................................................... 29

*Hettinga v. United States*,
    677 F.3d 471 (D.C. Cir. 2012) ............................................................ 10

*Int'l Refugee Assistance Project v. Trump*,
    857 F.3d 554 (4th Cir.) (en banc),
    *vacated on mootness grounds*, 138 S. Ct. 353 (2017) .......................... 17

*Jacobson v. Massachusetts*,
    197 U.S. 11 (1905) ....................................................................... 24-28

*Johnson v. Brown*,
    Civ. A. No. 21-1494, 2021 WL 4846060 (D. Or. Oct. 18, 2021) .......... 25

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ............................................................................. 9

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
    140 S. Ct. 2367, 2380 (2020) .............................................................. 21

*Logan v. Dep't of Veterans Affairs*,
    357 F. Supp. 2d 149 (D.D.C. 2004) ...................................................... 9

*Mahoney v. Donovan*,
    721 F.3d 633 (D.C. Cir. 2013) ............................................................ 13

*Maniscalco v. N.Y. City Dep't of Educ.*,
    Civ. A. No. 21-5055, 2021 WL 4344267 (E.D.N.Y. Sept. 23, 2021),
    *aff'd*, No. 21-2343, 2021 WL 4814767 (2d Cir. Oct. 15, 2021),
    *application for injunctive relief denied*, No.21A50 (U.S. Oct. 1, 2021) ................................ 24

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ........................................................................... 11

*McCray v. Biden*,
    Civ. A. No. 21-2882 (RDM), 2021 WL 5823801 (D.D.C. Dec. 7, 2021) ............................ 17

*McDonald v. City of Chicago,*
  561 U.S. 742 (2010) ........................................................................................... 25

*McNutt v. Gen. Motors Acceptance Corp.,*
  298 U.S. 178 (1936) ............................................................................................. 9

*Mississippi v. Johnson,*
  71 U.S. (4 Wall.) 475 (1866) .......................................................................... 16-17

*Myers v. United States,*
  272 U.S. 52 (1926) ............................................................................................. 20

*NASA v. Nelson,*
  562 U.S. 134- 49 (2011) ................................................................................. 23-24

*Navy Seal 1 v. Biden,*
  Civ. A. No. 21-02429, 2021 WL 5448970 (M.D. Fla. Nov. 22, 2021) ..................... 17

*Norris v. Stanley,*
  Civ. A. No. 21-0756, 2021 WL 4738827 (W.D. Mich. Oct. 8, 2021) ..................... 25

*Nyunt v. Chairman, Broad. Bd. of Govs.,*
  589 F.3d 445 (D.C. Cir. 2009) ........................................................................... 13

*Oklahoma v. Biden,*
  Civ. A. No. 21-1136, 2021 WL 6126230 (W.D. Okla. Dec. 28, 2021) ..................... 20

*Old Dominion Branch No. 694, Nat'l Ass'n of Letter Carriers v. Austin,*
  418 U.S. 264 (1974) ........................................................................................... 19

*Pinar v. Dole,*
  747 F.2d 899 (4th Cir. 1984) ............................................................................. 14

*Planned Parenthood of Southeast Pennsylvania v. Casey,*
  505 U.S. 833 (1992) ........................................................................................... 26

*Potter v. District of Columbia,*
  558 F.3d 542 (D.C. Cir. 2009) ........................................................................... 11

*Prince v. Massachusetts,*
  321 U.S. 158 (1944) ........................................................................................... 24

*Raich v. Gonzales,*
  500 F.3d 850 (9th Cir. 2007) ............................................................................. 25

*Rodden v. Fauci,*
  Civ. A. No. 21-0317, 2021 WL 5545234 (S.D. Tex. Nov. 27, 2021) ............... 17, 18

*Rodriguez-Vélez v. Pierluisi-Urrutia,*
  Civ. A. No. 21-1366, 2021 WL 5072017 (D.P.R. Nov. 1, 2021) ......................... 25

*Roe v. Wade*,
    410 U.S. 113 (1973) ......................................................................................... 26

*Rydie v. Biden*,
    Civ. A. No. 21-2696, 2021 WL 5416545 (D. Md. Nov. 19, 2021) ........................... 17, 20, 29

*Sampson v. Murray*,
    415 U.S. 61- 92 (1974) ......................................................................................... 28

*Scenic Am., Inc. v. U.S. Dep't of Transp.*,
    836 F.3d 42 (D.C. Cir. 2016) ........................................................................... 17-18

*Scottsdale Capital Advisors Corp. v. Financial Indus. Regulatory Auth., Inc.*,
    844 F.3d 414 (4th Cir. 2016) ............................................................................... 14

*Seila Law LLC v. CFPB*,
    140 S. Ct. 2183 (2020) ......................................................................................... 18

*Smith v. Biden*,
    Civ. A. No. 21-19457, 2021 WL 5195688 (D.N.J. Nov. 8, 2021) ..................................... 20, 25

*Thunder Basin Coal Co. v. Reich*,
    510 U.S. 200 (1994) ......................................................................................... 14

*Townsend v. United States*,
    236 F. Supp. 3d 280 (D.D.C. 2017) ....................................................................... 13

*Trump v. Hawaii*,
    138 S. Ct. 2392 (2018) ......................................................................................... 29

*U.S. Civil Serv. Comm'n v. National Ass'n of Letter Carriers*,
    413 U.S. 548 (1973) ......................................................................................... 19

*United States v. Fausto*,
    484 U.S. 439 (1988) ......................................................................................... 12

*Valdez v. Graham*,
    Civ. A. No. 21-0783, 2021 WL 4145746 (D.N.M. Sept. 13, 2021),
    *application for injunctive relief denied*, No. 21A253 (U.S. Dec. 21, 2021) ..................... 24-25

*Washington v. Glucksberg*,
    521 U.S. 702 (1997) ..................................................................................... 25-27

*Waters v. Gaston Cty.*,
    57 F.3d 422 (4th Cir. 1995) ................................................................................. 28

*Workman v. Mingo Cty. Bd. of Educ.*,
    419 F. App'x 348 (4th Cir. 2011) ................................................................ 24, 28-29, 30

*Zucht v. King*,
    260 U.S. 174 (1922) ......................................................................................... 24

**Constitutional Provisions**

U.S. Const. art. II, § 1, cl. 1 ................................................................. 18

U.S. Const. art. II § 3 ......................................................................... 18

**Statutes**

5 U.S.C. § 1212(a)(2) ......................................................................... 12

5 U.S.C. § 1212(a)(1)(A) ..................................................................... 12

5 U.S.C. § 1214(a)(3) ......................................................................... 12

5 U.S.C. § 2301(b)(2) ......................................................................... 12

5 U.S.C. § 2302 ................................................................................. 12

5 U.S.C. § 2302(a)(2)(A)(iii) ............................................................... 15

5 U.S.C. § 2302(a)(2)(A)(xii) .............................................................. 15

5 U.S.C. § 2302(b)(1)-(14) .................................................................. 12

5 U.S.C. § 3301 .................................................................. 3, 19, 22, 23

5 U.S.C. § 3302 ......................................................................... 3, 19

5 U.S.C. § 7301 ..................................................................... 3, 19, 21

5 U.S.C. § 7503 ................................................................................. 19

5 U.S.C. § 7512 ................................................................................. 12

5 U.S.C. § 7512 ................................................................................. 19

5 U.S.C. § 7513(d) ............................................................................. 12

5 U.S.C. § 7703(b)(1) ......................................................................... 12

42 U.S.C. § 2000e-16 ......................................................................... 19

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ................................... 3, 9, 12, 30

Federal Rule of Civil Procedure 12(b)(6) ................................. 3, 9-10, 30

Federal Rule of Civil Procedure 56(a) ..................................................... 10

Federal Rule of Civil Procedure 56(e) ..................................................... 10

**Other**

5 C.F.R. § 752.404 ............................................................................. 6

Executive Order No. 11491, 34 Fed. Reg. 17,605 (Oct. 31, 1969) ........................ 21

Executive Order No. 12564, 51 Fed. Reg. 32,889 (Sept. 15, 1986) ..................... 3, 21

Executive Order No. 12674, 54 Fed. Reg. 15,159 (Apr. 12, 1989) ...................... 4, 21

Executive Order No. 13991, 86 Fed. Reg. 7045, 7046 (Jan. 25, 2021) ..................... 5

Executive Order No. 14043, 86 Fed. Reg. at 50,989 (Sept. 9, 2021) ............... 5, 22, 27

Defendants Joseph R. Biden, Jr., President of the United States, and others,[1] respectfully submit this Memorandum of Law in Support of Defendants' Motion to Dismiss and in Opposition to Plaintiff's Motion for Summary Judgment.

## INTRODUCTION

On September 9, 2021, President Biden issued an executive order directing federal agencies to require, "consistent with applicable law," that their employees be vaccinated against COVID-19 unless a legally required exception applies. The executive order is amply supported by the President's constitutional and statutory authority to oversee the federal workforce and protect public health.

Plaintiff's challenge to the executive order and the associated implementing regulations and guidance is meritless. As an initial matter, the Court should dismiss Plaintiff's claims for lack of subject matter jurisdiction because the Civil Service Reform Act requires Plaintiff to assert challenges to employment actions in compliance with that statute: certain lesser personnel actions may be challenged before the Office of Special Counsel, and more serious adverse actions (like suspensions and removal from the federal service) may be challenged before the Merit Systems Protection Board, with judicial review in the Federal Circuit. Plaintiff is unable to avoid that comprehensive statutory regime by asserting a constitutional claim in this Court. The Complaint should be dismissed on this basis.

---

[1]      In addition to President Biden, Plaintiff has sued the following individuals and agencies: United States Office of Personnel Management and its Director, Kiran Ahuja; the General Services Administration and its Administrator, Robin Carnahan; Office of Management and Budget and its Acting Director, Shalanda Young; the Safer Federal Workforce Task Force and its Co-Chair, Jeffrey Zients; the United States Department of Defense (the "Defense Department") and its Secretary, Lloyd J. Austin, III; and the Department of the Navy and Secretary of the Navy Carlos Del Toro.

Further, Plaintiff's arguments that the President lacked constitutional and statutory authority to require federal employees to be vaccinated are misplaced.  The President is head of the Executive Branch, and under Article II of the Constitution, he has broad authority to set terms and conditions of federal employment, at least absent congressional action to the contrary. Given the President's Article II authority, the appropriate question is not whether Congress has permitted the President to issue a vaccination requirement—it is whether it has prohibited him from doing so.  And even if explicit congressional authorization were required, Plaintiff ignores the plain text of Title 5 of the United States Code, which authorizes the President to promote the efficiency of the federal workforce and regulate the conduct of executive branch employees.  The Court should reject Plaintiff's effort to awkwardly parse the statutory language to suggest that the President may regulate the federal workforce but cannot ensure that the federal workforce is efficient and safe from public health threats.

Plaintiff's argument also notably understates the government's compelling interest in preventing illness and morbidity in its work force and promoting public health and reducing the continued spread of COVID-19.  The vaccination requirement plainly furthers this purpose. Plaintiff misses the mark by failing to recognize these significant public health goals significantly outweigh the pecuniary interest that Plaintiff retains in his continued employment. Every court to consider the question, following Jacobson, has held that compulsory vaccination is constitutional.

Finally, Plaintiff's reliance on the unconstitutional conditions doctrine is off the mark. This doctrine applies when the government coerces an individual to relinquish his constitutional rights.  In this case, the government is not forcing Plaintiff to get vaccinated.  Rather, Plaintiff has the choice whether to comply with the vaccination requirement, which provides for legally

2

required exceptions.  And, even if vaccination were mandatory, compulsory vaccination is

constitutional.  For these reasons, Plaintiff's reliance on the unconstitutional condition doctrine is

meritless.

Based on these arguments, as discussed in detail below, the Court should grant this

motion and dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure ("Rule")

12(b)(1) and 12(b)(6).  If the Court reaches the merits of Plaintiff's Motion for Summary

Judgment, it should deny the motion.

## STATUTORY AND REGULATORY FRAMEWORK

As Chief Executive Officer of the Executive Branch, the President has constitutional

authority under Article II to ensure the efficient execution of federal law by the federal

workforce.  Congress has also enacted various statutes confirming the President's broad power to

regulate the federal civil service. The President has express authority to "prescribe regulations

for the conduct of employees in the executive branch." 5 U.S.C. § 7301.  He "may prescribe

rules governing the competitive service." *Id.* § 3302.  And he may "prescribe such regulations

for the admission of individuals into the civil service in the executive branch as will best promote

the efficiency of that service." *Id.* § 3301.

These complementary authorities provide the foundation for many familiar restrictions on

federal employees' conduct.  In 1986, for example, President Reagan issued an executive order

requiring that federal employees abstain from the use of illegal drugs, both on and off duty.  *See*

Exec. Order No. 12564, 51 Fed. Reg. 32,889 (Sept. 15, 1986).  In 1989, President George H.W.

Bush issued an executive order setting out "principles of ethical conduct" for federal employees,

requiring that they refrain from conduct on or off the job that would conflict with their official

duties; satisfy all "just financial obligations," including by paying federal, state, and local taxes;

and refrain from soliciting or accepting gifts from persons doing business with their agencies, among other restrictions.  *See* Exec. Order No. 12674, 54 Fed. Reg. 15,159 (Apr. 12, 1989).

The COVID-19 pandemic has killed nearly 940,000 Americans and has disrupted a wide range of businesses.  *See* Centers for Disease Control and Prevention, COVID Data Tracker, https://go.usa.gov/xtpWf (last visited Feb. 25, 2022).  Employers have been severely affected by exposures and outbreaks of illness among employees, and many businesses and other organizations have been forced to alter operations or close their doors, either temporarily or permanently. In early September 2021, "nearly 5 million American workers reported missing work . . . because they had COVID-19 or were caring for someone with COVID-19."  The White House, White House Report: Vaccination Requirements Are Helping Vaccinate More People, Protect Americans from COVID- 19, and Strengthen the Economy 4 (Oct. 2021), https://go.usa.gov/xtNTB (White House Vaccination Report) (last visited Feb. 25, 2022).  Five million Americans also reported in September 2021 that they had been unable to work at some point in the last four weeks because their employer had closed or lost business due to the pandemic.  U.S. Bureau of Labor Statistics, Employment Situation News Release (Oct. 8, 2021), https://go.usa.gov/xtUWu (last visited Feb. 25, 2022).

Many employers throughout the United States have responded by requiring that their employees be vaccinated against COVID-19.  As of fall 2021, thousands of hospitals, colleges, and universities and hundreds of private businesses had imposed employee vaccination requirements.  White House Vaccination Report at 9.  Among these were some of the United States' largest and most prominent employers, including United Airlines, Tyson Foods, AT&T, Bank of America, CVS, Disney, Google, Hess, Johnson & Johnson, Microsoft, Netflix, Procter & Gamble, and Walgreens.  *Id.* at 12.  The reason for these employers' decisions is clear: higher

employee vaccination rates can be expected to reduce worker morbidity, mortality, and absenteeism and increase worker productivity and labor market participation. *Id.* at 17.

The federal government has not been spared from the workplace disruptions that COVID-19 has inflicted. The pandemic has interfered with numerous aspects of the government's work, forcing office closures, limiting employees' access to paper-based records, impeding official travel, and causing staffing shortages. *See generally* Pandemic Response Accountability Comm., Top Challenges Facing Federal Agencies: COVID-19 Emergency Relief and Response Efforts (June 2020), https://go.usa.gov/xefTb (Top Challenges Facing Federal Agencies) (last visited Feb. 25, 2022).

On September 9, 2021, to "ensur[e] the health and safety of the Federal workforce and the efficiency of the civil service," President Biden issued Executive Order 14043, which announced a COVID-19 vaccination requirement for federal civilian employees. *See* 86 Fed. Reg. at 50,989. The order instructs federal agencies to "implement, to the extent consistent with applicable law, a program to require COVID-19 vaccination for all of [their] Federal employees, with exceptions only as required by law." *Id.* at 50,990. The order, which is based on "public health guidance" from the Centers for Disease Control and Prevention assessing that "the best way to slow the spread of COVID- 19 and to prevent infection by the Delta variant or other variants is to be vaccinated," directs the Safer Federal Workforce Task Force (the "Task Force") to issue guidance on implementation of the vaccination requirement. *Id.* at 50,989-90; *see also* Exec. Order No. 13991, 86 Fed. Reg. 7045, 7046 (Jan. 25, 2021) (establishing the Task Force).

The Task Force guidance recognizes that federal employees may be entitled to exceptions from the vaccination requirement based on a disability (which would include medical conditions) or religious objections. *See* Task Force, Vaccinations, Limited Exceptions to Vaccination

Requirement, https://go.usa.gov/xe5aC (last visited Feb. 3, 2022) (the "Exception FAQs").  It indicates that each agency should "follow its ordinary process to review and consider what, if any, accommodation [the agency] must offer" under applicable federal law.  Task Force, Vaccinations, Enforcement of Vaccination Requirement for Employees, https://go.usa.gov/xe5aC (last visited Feb. 25, 2022) (the "Enforcement FAQs"). The guidance states that federal employees who have not requested or received an exception should be fully vaccinated "by November 22, 2021," Task Force, Vaccinations, Vaccination Requirement for Federal Employees, https://go.usa.gov/xe5aC (last visited Feb. 25, 2022), but employees who request an exception should not be subject to discipline while the request is under consideration, Enforcement FAQs.  If an exception request is denied, the employee should be given two weeks from the denial to receive the first (or only) dose of a COVID-19 vaccine before an agency initiates any enforcement proceedings.  *See* Exception FAQs.

If employees refuse to be vaccinated and lack an approved exception request, either because they did not request an exception or their exception request has been denied, or if they refuse to disclose their vaccination status, guidance from the Task Force and the Office of Personnel Management recommends a procedure for progressive discipline that includes a period of education and counseling, followed by, optionally, a letter of reprimand, and then suspension. *See* Enforcement FAQs.  If noncompliance continues, the guidance provides for additional discipline up to and including potential removal from the federal service.  *See id.* Federal employees, such as Plaintiff, also enjoy additional procedural protections prior to termination, such as 30 days' advance written notice of the proposed action, an opportunity to respond (orally and in writing), and a written decision setting forth the basis for removal.  *See generally* 5 C.F.R. § 752.404.

## FACTUAL BACKGROUND AND PRIOR PROCEEDINGS

### I.    ALLEGATIONS IN THE COMPLAINT

Plaintiff is an engineer with the Office of Naval Research, a component of the

Department of the Navy.  Compl. ¶¶ 2, 6.  Plaintiff alleges that, at an unspecified time, he

contracted COVID-19 and recovered, and alleges that he "has natural immunity" against the

virus.  *Id.* ¶¶ 2, 7.  Plaintiff "refuses vaccination."  *Id.* ¶ 2.

On or about October 1, 2021, OPM issued a memorandum directing agencies to require

non-excepted employees to be fully vaccinated by November 22, 2021, as well as guidance to

advise their workers that "failure to comply will result in disciplinary action up to and including

removal or termination."  *Id.* Exs. 4, 5.  On the same day, the Defense Department issued a

memorandum requiring civilian employees to be "fully vaccinated" by November 22, 2021.  *Id.*

Ex. 6.

On October 29, 2021, the Defense Department provided updated guidance, advising that

individuals with "previous COVID-19 infection(s) or antibody test results are not considered

fully vaccinated."  *Id.* Ex. 8.  On November 5, 2021, the Navy issued a memorandum requiring

all civilian employees to be fully vaccinated by November 22, 2021, and that employees may be

disciplined by that date, unless the employee has received an exemption or the agency is

considering an exemption.  *Id.* Ex. 9.

Plaintiff has advised his supervisors that he declines vaccination and has not submitted

the required form to his employer indicating his vaccination status.  *Id.* ¶¶ 53-54.

### II.   PROCEDURAL HISTORY

On November 22, 2021, Plaintiff commenced this civil action.  ECF No. 1.  The

Complaint alleges that Executive Order 14043 and the associated Task Force and agency actions

are *ultra vires* and unenforceable.  His three Claims for Relief assert violations of the separation

of powers and Plaintiff's constitutional privacy rights, as well as an unconstitutional condition on

fundamental constitutional rights.  Compl. ¶¶ 60-86.  Plaintiff seeks declaratory and injunctive

relief, and reasonable costs and attorney fees.  *Id.* at 26.

On November 24, 2021, Plaintiff filed a Motion for Summary Judgment with respect to

the three claims raised in the Complaint.  ECF No. 4.  Plaintiff submitted an affidavit in support

of his motion in which he asserts that he believes the vaccine "is unnecessary for individuals who

are already immune due to infection-induced immunity" and that he has "chosen to decline this

medication" for that reason and because "the vaccine has been linked to serious, though rare,

side effects."  ECF No. 4-2 ¶¶ 11-12.  Plaintiff further asserts that he has suffered reputational

harm at work because "*all* non-vaccinated individuals are being stigmatized in public statements

and in Departmental directives and guidance as presenting a uniquely significant risk to

themselves and others in the workplace, even if they have infection-induced immunity and even

if they are on 100% telework."  *Id.* ¶ 13.  Plaintiff also states that, unlike vaccinated employees,

he is subject to "burdensome masking requirements" and will be subjected to "intrusive testing

requirements and extra scrutiny for work related travel."  *Id.* ¶ 14.

On January 3, 2022, the Court issued a Minute Order denying Defendants' Motion to

Stay Briefing on Summary Judgment Pending the Resolution of Defendants' Motion to Dismiss

and directing Defendants to file a combined Motion to Dismiss and Opposition to Motion for

Summary Judgment by February 7, 2022, a deadline that was subsequently extended until

February 25, 2022.[2]

---

[2]     On January 21, 2022, a judge in the Southern District of Texas entered a nationwide
preliminary injunction against Executive Order 14043.  *Feds for Medical Freedom v. Biden*, Civ.
A. No. 3:21-0356, 2022 WL 188329 (S.D. Tex. Jan. 21, 2022).  The government has appealed

## APPLICABLE LEGAL STANDARDS

### I.      RULE 12(b)(1) – LACK OF SUBJECT MATTER JURISDICTION

Motions filed under Rule 12(b)(1) allow a party to challenge the subject matter

jurisdiction of the district court to hear a case.  Fed. R. Civ. P. 12(b)(1).  Federal courts are courts

of limited jurisdiction, only possessing the power authorized by the Constitution and statutes.

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "There is a presumption

against federal court jurisdiction and the burden is on the party asserting the jurisdiction, the

plaintiff in this case, to establish that the Court has subject matter jurisdiction over the action."

*Logan v. Dep't of Veterans Affairs*, 357 F. Supp. 2d 149, 153 (D.D.C. 2004) (citing *McNutt v.*

*Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)).

### II.     RULE 12(b)(6) – FAILURE TO STATE A CLAIM

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon

which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive such a motion, the complaint

must contain factual matter sufficient to "state a claim to relief that is plausible on its face."  *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim is one that "allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This standard does not amount to a

specific probability requirement, but it does require "more than a sheer possibility that a

defendant has acted unlawfully."  *Id.*; *see also Twombly*, 550 U.S. at 557 ("Factual allegations

must be enough to raise a right to relief above the speculative level.").  A complaint need not

---

that ruling to the U.S. Court of Appeals for the Fifth Circuit; both a motion for stay pending
appeal and the appeal itself are now fully briefed, and the court will hold oral argument on
March 8, 2022.  As long as the injunction is in force, the Navy will not take enforcement action
regarding Plaintiff's noncompliance with Executive Order 14043 and related agency guidance.

contain "detailed factual allegations," but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. When deciding a Rule 12(b)(6) motion, the court may consider only the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, and judicially noticeable materials. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## III.   RULE 56 – SUMMARY JUDGMENT

Rule 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the overall design of the rules of civil procedure, which is to secure the just, speedy, and inexpensive determination of every action. *Celotex Corp.*, 477 U.S. at 327. Indeed, the "very mission" of Rule 56 is "to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56(e) (advisory committee note).

Where no genuine dispute exists as to any material fact, summary judgment is required. *Anderson*, 477 U.S. 242. A genuine issue of material fact is one that could change the outcome of the litigation. *Id*. at 247. The party moving for summary judgment need not prove the absence of an essential element of the nonmoving party's case. *Celotex Corp.*, 477 U.S. at 325. "The burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the non-moving party's case." *Id*. Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

To avoid summary judgment, the plaintiff must present some objective evidence that would enable the court to find an entitlement to relief. "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *Potter v. District of Columbia*, 558 F.3d 542, 549 (D.C. Cir. 2009) ("[M]erely colorable or not significantly probative evidence . . . is insufficient to defeat a summary judgment motion." (internal quotation marks and citation omitted)). Unsupported speculation is not enough to defeat a summary judgment motion; the existence of specific material evidentiary facts must be shown. *See, e.g., David v. Dist. of Columbia*, 246 F. Supp. 3d 647 (D.D.C. 2017) (non-moving party's opposition "must consist of more than mere unsupported allegations or denials").

**ARGUMENT**

I.   **THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS.**

A.   **Plaintiff's Claims Are Barred by the Civil Service Reform Act.**

This Court lacks jurisdiction over Plaintiff's claims because the Civil Service Reform Act ("CSRA") precludes review of Plaintiff's claims. Plaintiff has the burden of establishing jurisdiction, and he has not carried that burden here. All claims in the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

In the CSRA, Congress "established a comprehensive system for reviewing personnel action taken against federal employees" who are covered by the statutory scheme. *United States v. Fausto*, 484 U.S. 439, 455 (1988). More serious "adverse actions"—including removal and suspension for more than 14 days, 5 U.S.C. § 7512—may generally be appealed directly to the Merit Systems Protection Board (the "Board"), with judicial review of the Board's decision in the Federal Circuit. *See id.* §§ 7513(d), 7703(b)(1). A challenge to a less severe "personnel action" may generally be sought through agency administrative or negotiated grievance procedures, through an equal employment opportunity complaint if a prohibited basis is alleged, or from the Office of Special Counsel if the applicant or employee alleges a prohibited reason for the action. *Id.* §§ 1214(a)(3), 2302.[3]

---

[3]   The CSRA defines "personnel action" broadly to extend beyond disciplinary or pre-disciplinary corrective actions. *See* 5 U.S.C. § 2302(a). Congress authorized the Office of Special Counsel to investigate whether a challenged "personnel action" constitutes a "prohibited personnel practice[]," including the violation of a law that directly concerns "fair and equitable treatment" of federal employees "with proper regard for their . . . constitutional rights." *Id.* §§ 1212(a)(2), 1214(a)(1)(A), 2301(b)(2), 2302(b)(1)-(14). The Office of Special Counsel thus has jurisdiction to investigate an employee's claim that a personnel action violated the Constitution. *See, e.g., Fleming v. Spencer*, 718 F. App'x 185, 188 (4th Cir. 2018) (per curiam).

The Supreme Court has held that the CSRA provides the exclusive means by which covered federal employees may challenge adverse employment actions (aside from limited exceptions for certain types of discrimination claims not at issue here). *See Elgin v. Dep't of the Treasury*, 567 U.S. 1, 5 (2012). The statute thus deprives district courts of jurisdiction to hear challenges to covered employment actions: "Given the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions, it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court." *Id.* at 11-12. The Supreme Court has described this as an "implied preclusion of district court jurisdiction." *Id.* at 12; *see also Bennett v. SEC*, 844 F.3d 174, 180-81 (4th Cir. 2016) (discussing *Elgin*). The D.C. Circuit has explained that "[t]he Act establishes the 'exclusive . . . remedial regime for federal government and personnel complaints.'" *Mahoney v. Donovan*, 721 F.3d 633, 635 (D.C. Cir. 2013) (quoting *Nyunt v. Chairman, Broad. Bd. of Govs.*, 589 F.3d 445, 448 (D.C. Cir. 2009)) (rejecting the plaintiff's challenge to a statute under the Administrative Procedure Act).

The CSRA is equally preclusive where an employee challenges an adverse employment action on constitutional grounds. In *Elgin*, for example, the Supreme Court required plaintiff federal employees to challenge their adverse employment actions through the statute's review scheme, rather than filing suit in district court, where they claimed that they were discharged because of an unconstitutional federal statute. 567 U.S. at 5; *see also Townsend v. United States*, 236 F. Supp. 3d 280, 321-22 (D.D.C. 2017) (dismissing for failure to state a claim the plaintiff's *Bivens* claims and claims alleging violations under the First and Fifth Amendments as precluded by the CSRA); *Fleming*, 718 F. App'x at 188 ("The CSRA plainly precludes extrastatutory

judicial review of constitutional claims that are asserted before an employee has exhausted his remedies available under the statute").

Plaintiff does not dispute that he is covered by the CSRA, and his standing to pursue his claims rests on potential personnel actions within the statute's scope. *See, e.g.*, Compl. ¶ 85 (asserting that Plaintiff "faces . . . discipline, up to and including removal from federal service, unless he submits to vaccination"). Plaintiff, however, cannot circumvent the CSRA's exclusive-review framework by launching a preemptive challenge to those personnel actions in district court. *Cf. Pinar v. Dole*, 747 F.2d 899, 909-12 (4th Cir. 1984) (holding that the CSRA barred a plaintiff's request that his employer "be enjoined from harassing him in the exercise of his first amendment rights and proposing any further unwarranted disciplinary action against him"); *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 216 (1994) (holding that a statutory scheme establishing a "comprehensive enforcement structure" in the interest of "channeling and streamlining the enforcement process" demonstrated Congress's intent to preclude pre-enforcement challenges); *Scottsdale Capital Advisors Corp. v. Financial Indus. Regulatory Auth., Inc.*, 844 F.3d 414, 417, 424 (4th Cir. 2016) (holding that a district court lacked jurisdiction to consider a challenge to "an ongoing disciplinary proceeding before the Financial Industry Regulatory Authority," as the plaintiff could "obtain meaningful judicial review of its claim . . . following the appeal process outlined" by statute).

Although Plaintiff's Complaint and motion make no effort to explain why his claims may proceed notwithstanding the CSRA, he asserted in a procedural filing that the statute did not apply because "the Supreme Court has never held that the questions presented here are of the sort that must or should be channeled through the" Board. ECF No. 11 at 6. That assertion is baseless, for there can be no reasonable dispute that a plaintiff who has not exhausted her

remedies under the CSRA may not resort to an action in district court simply because she challenges a policy that also affects others.  In *Elgin*, for example, the Supreme Court held that the CSRA precluded "claims for equitable relief" by plaintiffs who were discharged based on a generally applicable, and allegedly unconstitutional, statute prohibiting individuals who failed to register for the draft from holding federal employment. 567 U.S. at 6-8; *see also, e.g.*, *American Fed'n of Gov't Emps. v. Secretary of the Air Force*, 716 F.3d 633, 639 (D.C. Cir. 2013) ("[A] plaintiff's inability to use the APA to circumvent the CSRA's requirements applies to a systemwide challenge to an agency policy interpreting a statute just as it does to the implementation of such a policy in a particular case." (quotation marks omitted)).  Allowing Plaintiff to evade the CSRA's administrative process by bringing a pre-enforcement suit to challenge broadly applicable policies would be especially inappropriate where, as here, a challenged policy allows exceptions for individual employees depending on employee-specific facts and circumstances (which the CSRA process would be particularly well equipped to review).

Indeed, permitting Plaintiff to file a preemptive attack on potential adverse employment actions that might someday result from a broadly applicable policy would amplify the "very potential for inconsistent decisionmaking and duplicative judicial review that the CSRA was designed to avoid."  *Elgin*, 567 U.S. at 14.  District courts around the country would be left to deal with preemptive challenges, while challenges to actual employment actions would continue to arise under the CSRA's scheme.[4]

---

[4]     In any event, a federal employee need not necessarily await suspension or discharge to invoke CSRA remedies: plaintiffs could potentially seek review by OSC now, alleging that the vaccination requirement constitutes a "significant change in duties, responsibilities, or working conditions," 5 U.S.C. § 2302(a)(2)(A)(xii), that amounts to a reviewable "personnel action." Or

Such bifurcated review would squarely contravene "[t]he CSRA's objective of creating an integrated scheme of review." *Id.* And that disruption would not be limited to preemptive challenges related to Executive Order 14043 or vaccination requirements; Plaintiff's reasoning would suggest that a federal employee who anticipated potential discipline based on any government policy affecting multiple employees could circumvent the CSRA's reticulated scheme by preemptively bringing suit in federal court.

Plaintiff argues that Congress has not delegated to the President the authority to impose a vaccination requirement and, therefore, Executive Order 14043 is *ultra vires*. Pl.'s Mem.[5] at 8-13. This argument is meritless, as described below, but it also is beside the point because the CSRA applies equally to allegations of *ultra vires* executive action. *See, e.g.*, *American Fed'n of Gov't Emps. v. Trump*, 929 F.3d 748, 757-58 (D.C. Cir. 2019) (holding that unions were required to present their ultra vires claims through the comprehensive administrative scheme created by the Federal Service Labor-Management Relations Statute, which is part of the CSRA); *see also Hall v. Clinton*, 235 F.3d 202, 203 (4th Cir. 2000) ("[T]he CSRA constitutes the exclusive remedy for claims arising out of federal employment. . . "). *Elgin* holds that claims challenging a statute on constitutional grounds must go through the CSRA scheme, and it follows that claims challenging a policy on the ground that it is *ultra vires* are subject to the same rule. And, as explained elsewhere in this brief, the Executive Order does not exceed the President's authority in any event.[6] And two courts, citing *Elgin*, have observed that challenges to Executive Order

---

an employee could seek review at an early stage of any still-hypothetical progressive disciplinary process, such as the receipt of a letter of reprimand. *Id.* § 2302(a)(2)(A)(iii).

[5]     Citations to "Pl.'s Mem." refer to the Memorandum of Points and Authorities Supporting Plaintiff Jason Payne's Motion for Summary Judgment, filed November 24, 2021. ECF No. 4-3.

[6]     Plaintiff's motion also does not provide any support for the proposition that the Court can grant injunctive or declaratory relief against the President. It is well established that "in general '[a] court has no jurisdiction of a bill to enjoin the President in the performance of his official

14043, like the one Plaintiff has brought here, fall within the CSRA's exclusive purview.  *See Rydie v. Biden*, Civ. A. No. 21-2696, 2021 WL 5416545, at *2 (D. Md. Nov. 19, 2021) ("To the extent Plaintiffs challenge their future terminations, they likely have to proceed through the CSRA process, even though they assert constitutional challenges."); *McCray v. Biden*, Civ. A. No. 21-2882 (RDM), 2021 WL 5823801, at *9 n.3 (D.D.C. Dec. 7, 2021).

For these reasons, the Court lacks subject matter jurisdiction over Plaintiff's claims.

**B.      Plaintiff's Claims Against the Task Force and Its Members Cannot Redress His Injuries.**

This Court lacks jurisdiction over Plaintiff's claims against the Task Force and its members because an order against these Defendants would not redress Plaintiff's asserted injuries.  Plaintiff lack standing to sue those entities because an order running against them would provide him no relief.  *See, e.g.*, *Abulhawa v. Dep't of Treasury*, 239 F. Supp. 3d 24, 36-37 (D.D.C. 2017) (generally discussing the Article III redressability requirement).  The Task Force and the COVID-19 Response Team merely issue nonbinding guidance: the requirement that agencies implement a vaccination requirement flows from the Executive Order itself.  Even if the Court were to vacate that guidance, agencies would still be obligated, under the Executive Order, to require COVID-19 vaccination of their employees.  Relief against the Task Force and its members therefore cannot redress Plaintiff's asserted injuries.  *Cf., e.g.*, *Scenic Am., Inc. v. U.S. Dep't of Transp.*, 836 F.3d 42, 53 (D.C. Cir. 2016) (vacatur of guidance insufficient to

---

duties.'"  *Franklin v. Massachusetts*, 505 U.S. 788, 802-03 (1992) (quoting *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1866)); *see also Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554, 605 (4th Cir.) (en banc), *vacated on mootness grounds sub nom. Trump v. Int'l Refugee Assistance*, 138 S. Ct. 353 (2017).  Other district courts considering similar challenges to the Executive Order at issue here have rejected claims on this basis.  *See McCray*, 2021 WL 5823801, at *5-8; *Rodden v. Fauci*, Civ. A. No. 21-0317, 2021 WL 5545234, at *2 & n.2 (S.D. Tex. Nov. 27, 2021); *Navy Seal 1 v. Biden*, Civ. A. No. 21-02429, 2021 WL 5448970, at *2 (M.D. Fla. Nov.22, 2021); *Foley v. Biden*, Civ. A. No. 21-1098, slip op. at 3 (N.D. Tex. Oct. 6, 2021), ECF No. 18.

redress injury); *Rodden*, 2021 WL 5545234, at *3 ("Even if the Task Force influences the

ultimate agency decision, the injury is not redressable if it results from the independent action of

some third party not before the court."). Accordingly, Plaintiff's alleged injuries—the

anticipated termination of employment—would be caused by his employer, the Navy, and not

the Task Force or any of its member agencies, or the heads of those agencies. For these reasons,

Plaintiff's claims against all Defendants other than the Navy should be dismissed for lack of

standing.

## II. PLAINTIFF'S CLAIMS SHOULD BE DISMISSED ON THE MERITS AND HE IS NOT ENTITLED TO SUMMARY JUDGMENT.

### A. The President Has Constitutional and Statutory Authority to Condition Federal Employment on Vaccination.

Plaintiff is mistaken that—despite his role as CEO of the Executive Branch—the

President lacks authority to impose reasonable conditions on federal employment, such as

vaccination requirements and other measures designed to curb the spread of disease in the federal

workforce. The President's exercise of that broad authority in Executive Order 14043 does not

infringe on any powers reserved exclusively to Congress or the states.

Executive Order 14043 is well within the President's constitutional and statutory

authority. "Under our Constitution, the 'executive power'—all of it—is 'vested in a President,'

who must 'take Care that the Laws be faithfully executed.'" *Seila Law LLC v. CFPB*, 140 S. Ct.

2183, 2191 (2020) (first quoting U.S. Const. art. II, § 1, cl. 1; and then quoting id. § 3). "[I]f any

power whatsoever is in its nature Executive, it is the power of appointing, overseeing, and

controlling those who execute the laws." *Free Enter. Fund v. Public Co. Accounting Oversight

Bd.*, 561 U.S. 477, 492 (2010) (quoting 1 Annals of Cong. 463 (1789)). The President's

authority presumptively extends to the management of all Executive Branch personnel, except to

the extent Congress has narrowed or channeled the President's baseline authority with respect to

federal employees. *See, e.g.*, 42 U.S.C. § 2000e-16 (Title VII protections for civil servants); 5 U.S.C. §§ 7503(a), 7513(a) (CSRA); *see also U.S. Civil Serv. Comm'n v. National Ass'n of Letter Carriers*, 413 U.S. 548, 557-58 (1973) (noting that, prior to the Civil War, "the spoils system under which federal employees came and went, depending upon party service and changing administrations, rather than meritorious performance," was the "prevalent basis for governmental employment").

Congress has enacted various statutory provisions that confirm the President's broad power to regulate the federal workforce.  The President has express statutory authority to "prescribe regulations for the conduct of employees in the executive branch," 5 U.S.C. § 7301; to "prescribe rules governing the competitive service," *id.* § 3302; and to "prescribe such regulations for the admission of individuals into the civil service in the executive branch as will best promote the efficiency of that service," *id.* § 3301.  As numerous courts have recognized, these provisions give the President "broad authority . . . to regulate employment matters." *Clarry v. United States*, 85 F.3d 1041, 1047 (2d Cir. 1996); *see also Old Dominion Branch No. 694, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 273 n.5 (1974) (concluding that an executive order governing federal labor relations was both "plainly a reasonable exercise of the President's responsibility for the efficient operation of the Executive Branch" and "express[ly]" authorized by 5 U.S.C. § 7301); *DiLuigi v. Kafkalas*, 584 F.2d 22, 24 n.3 (3d Cir. 1978) Congress delegated broad power to the President to establish qualifications and conditions of employment."); *Friedman v. Schwellenbach*, 159 F.2d 22, 24 (D.C. Cir. 1946) ("[The United States] has the right to prescribe the qualifications of its employees and to attach conditions to their employment.").

Relying on these provisions, as well as the President's authority under Article II, courts have concluded that the President had authority to issue Executive Order 14043. *See Brnovich v. Biden*, Civ. A. No. 21-1568, 2022 WL 252396, at *12 (D. Ariz. Jan. 27, 2022); *Oklahoma v. Biden*, Civ. A. No. 21-1136, 2021 WL 6126230, at *10 (W.D. Okla. Dec. 28, 2021); *Brass v. Biden*, Civ. A. No. 21-2778, 2021 WL 6498143, at *3 (D. Colo. Dec. 23, 2021) (report and recommendation), adopted, 2022 WL 136903 (D. Colo. Jan. 14, 2022); *Rydie*, 2021 WL 5416545, at *3; *Smith v. Biden*, Civ. A. No. 21-19457, 2021 WL 5195688, at *6 (D.N.J. Nov. 8, 2021).[7]

Plaintiff's premise, Pl.'s Mem. at 8, that only Congress has authority to regulate the federal workforce contravenes the Supreme Court's repeated pronouncements, as well as the longstanding position of the Executive Branch. *See, e.g.*, *Free Enter. Fund*, 561 U.S. at 492 (emphasizing the Executive power to "appoint[], oversee[], and control[] those who execute the laws"); *Myers v. United States*, 272 U.S. 52, 163-64 (1926) ("[A]rticle 2 grants to the President the executive power of the government— i[.]e., the general administrative control of those executing the laws . . . "); *Appointment and Promotion of Women in Federal Civil Service*, 4 Op. Att'y Gen. 157, 160 (1962) (noting that "[t]he power of the President to prescribe rules for the promotion of the efficiency of the Federal Service" derives in part "from his constitutional power as Chief Executive"); *cf. Dep't of the Navy v. Egan*, 484 U.S. 518, 527 (1988) (explaining that the President's "authority to classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to occupy a position

---

[7]     One court has reached a contrary conclusion, holding that the Executive Order exceeds the President's authority. *See Feds for Med. Freedom*, 2022 WL 188329, at *4-6.  The government has appealed that decision to the Fifth Circuit.  On February 11, 2022, the District Court denied the government's motion for a stay pending appeal.

in the Executive Branch that will give that person access to such information flows primarily from th[e] constitutional investment of power in the President and exists quite apart from any explicit congressional grant").

Plaintiff fails to persuasively explain why the statutory provisions the Executive Order invokes—which reinforce and confirm the President's underlying constitutional authority—do not authorize the President's action.  His argument is limited to the general assertion that the cited statutory authorities "do not expressly authorize" or "fairly impl[y]" a vaccination requirement.  Pl.'s Mem. at 10.  Plaintiff's motion fails to confront the fact that the referenced statutes serve as the basis for many familiar conditions of federal service, including requirements that federal employees abstain from the use of illegal drugs, both on and off duty, *see* Exec. Order No. 12564, 51 Fed. Reg. 32,889 (Sept. 15, 1986); refrain from engaging in conduct on or off the job that would conflict with their official duties, *see* Exec. Order No. 12674, § 101(j), 54 Fed. Reg. 15,159 (Apr. 12, 1989); and satisfy all "just financial obligations," including by paying federal, state, and local taxes, *id.* § 101(l); *see also* Exec. Order No. 11491, 34 Fed. Reg. 17,605 (Oct. 31, 1969) (specifying that Executive Branch employees have the right "to form, join, and assist a labor organization," while requiring that the labor organization's "internal business . . . shall be conducted during the non-duty hours").

Indeed, 5 U.S.C. § 7301 broadly authorizes the President to "prescribe regulations for the conduct of employees in the executive branch."  5 U.S.C. § 7301.  "Congress could have limited" the statutory language "in any number of ways, but it chose not to do so."  *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2380 (2020).  The statute plainly allows the President to promulgate regulations for the "conduct" of executive branch employees, reflecting the President's judgment about how best to promote the workplace

efficiency of the civil service.  Section 7301 and other statutory provisions, as well as the President's constitutional authority, amply support the President's issuance of the Executive Order to ensure that the workplace is safe and efficient.  *Cf. Giesler v. MSPB*, 686 F.2d 844, 849 (10th Cir. 1982) (deferring to agency judgment about "[t]he remedy necessary to promote efficiency of civil service").

Plaintiff's motion offers no basis to second-guess the President's finding that requiring federal employees to be vaccinated would serve the "efficiency" of the civil service within the meaning of 5 U.S.C. § 3301, an additional provision that supports the Executive Order's promulgation.  The President expressly found that "ensuring the health and safety of the Federal workforce and the efficiency of the civil service requires immediate action" and that "the best way to slow the spread of COVID-19 and to prevent infection . . . is to be vaccinated."  86 Fed. Reg. at 50,989; *see also* Top Challenges Facing Federal Agencies (explaining that the COVID-19 pandemic has disrupted federal workplaces by forcing office closures, limiting employees' access to paper-based records, impeding official travel, and causing staffing shortages); *American Fed'n of Gov't Emps. v. Hoffman*, 543 F.2d 930, 938 (D.C. Cir. 1976) (recognizing that § 3301 reflects an "obvious intent of Congress to confer broad discretion upon the President and the" now-defunct Civil Service Commission).

Plaintiff suggests that 5 U.S.C. § 3301 provides no authority for the President to promulgate Executive Order 14043 because that provision simply concerns "admission" to federal employment, while plaintiffs "already hold federal jobs."  *See* Pl.'s Mem. at 10.  The Executive Order requires that new entrants to the federal service be vaccinated against COVID-19, and this provision plainly confirms the President's authority to impose that requirement.  *See Task Force, Vaccinations, Vaccination Requirement for Federal Employees*,

22

https://go.usa.gov/xe5aC (last visited Feb. 25, 2022). Moreover, courts have recognized that, "[u]nder 5 U.S.C. [§] 3301," like the other provisions at issue, "Congress has delegated broad authority to the President to establish the qualifications and conditions of employment for civil servants within the executive branch." *Hoffman*, 543 F.2d at 938; *see also Atkins v. Salazar*, 677 F.3d 667, 670-71 & n.1 (5th Cir. 2011) (noting that new National Park Service medical qualification standards, which were applied to a long-time employee, had been promulgated under 5 U.S.C. § 3301. The authority to establish requirements for new federal employees necessarily includes the authority to modify requirements for existing employees.

**B.   The Challenged Vaccine Requirement Does Not Infringe on Plaintiff's Constitutional Rights.**

Even if Plaintiff could evade the CSRA's requirements, he has failed to state a claim upon which relief can be granted because Executive 14043 was lawfully issued consistent with the U.S. Constitution and Congressional statutes. Nor does the vaccination requirement infringe on Plaintiff's constitutional rights.

### 1.   *Plaintiff's Argument That the Executive Order Violates His Constitutional Rights Is Meritless.*

This case does not concern whether an individual possesses a constitutional right to refuse vaccination, but rather whether an individual has a right to hold federal employment while refusing to be vaccinated against COVID-19 or to disclose his vaccination status. *Cf. We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 294 (2d Cir. 2021) (per curiam) (explaining that New York's vaccination requirement for certain health care workers was "a condition of employment in the healthcare field; the State is not forcibly vaccinating healthcare workers"); *NASA v. Nelson*, 562 U.S. 134, 148- 49 (2011) ("[T]he Government has a much freer hand in dealing with citizen employees than it does when it brings its sovereign power to bear on citizens at large."

23

(quotation marks omitted)).  Plaintiff has cited no case that holds that any such constitutional right exists.

Even assuming the Executive Order could be subject to the same analysis as vaccination requirements that apply more generally, it is well established that vaccination requirements do not impermissibly burden any "fundamental right ingrained in the American legal tradition." *Klaassen v. Trustees of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) (noting that "vaccination requirements, like other public-health measures, have been common in this nation");[8] *see also Workman v. Mingo Cty. Bd. of Educ.*, 419 F. App'x 348, 355-56 (4th Cir. 2011) (holding that a parent had no fundamental right to avoid immunizing her child as a precondition to attending school).  That is consistent with the Supreme Court's longstanding recognition that a government may require vaccination even under penalty of criminal sanctions.  *See Jacobson v. Massachusetts*, 197 U.S. 11, 29 (1905); *see also Prince v. Massachusetts*, 321 U.S. 158, 166-67 (1944) (reiterating that the Constitution does not provide "freedom from compulsory vaccination"); *Zucht v. King*, 260 U.S. 174, 176-77 (1922) (similar); *cf. Biden v. Missouri*, 142 S.

---

[8]     Justice Barrett denied an emergency application to enjoin the vaccine requirement at issue in *Klaassen*.  *See Klaassen v. Trustees of Ind. Univ.*, No. 21A15 (U.S. Aug. 12, 2021) (Barrett, J., in chambers).  Justice Sotomayor denied an application for emergency relief in *Maniscalco v. New York City Department of Education*, which concerned a substantive due process challenge to a vaccination requirement imposed on public employees.  Civ. A. No. 21-5055, 2021 WL 4344267, at *3 (E.D.N.Y. Sept. 23, 2021), *aff'd*, No. 21-2343, 2021 WL 4814767 (2d Cir. Oct. 15, 2021), *application for injunctive relief denied*, No. 21A50 (U.S. Oct. 1, 2021) (Sotomayor, J., in chambers).  And Justice Gorsuch denied an application for an injunction in *Valdez v. Grisham*, which rejected a constitutional challenge to state orders requiring vaccination for health care workers and entrants to a state fair.  *See* Civ. A. No. 21-0783, 2021 WL 4145746, at *5-8 (D.N.M. Sept. 13, 2021), *application for injunctive relief denied*, No. 21A253 (U.S. Dec. 21, 2021) (Gorsuch, J., in chambers).

Ct. 647 (2022) (staying preliminary injunctions against a rule requiring that staff of certain health care facilities be vaccinated against COVID-19).[9]

Plaintiff attempts to characterize the right at issue as "a fundamental liberty interest" in "personal privacy and bodily integrity." Pl.'s Mem. at 13, 15, 16, 17.[10] The Court's substantive due process analysis must begin with "a careful, specific description of the right at issue." *McDonald v. City of Chicago*, 561 U.S. 742, 797 (2010) (Scalia, J., concurring); *see also, e.g.*, *Raich v. Gonzales*, 500 F.3d 850, 863 (9th Cir. 2007) (court must "adopt a narrow definition of the interest at stake"); *Hawkins v. Freeman*, 195 F.3d 732, 739 (4th Cir. 1999) (cautioning against "analyzing the claimed right at too general a level"). The Court must then determine whether the asserted right—"thus narrowly defined," *McDonald*, 561 U.S. at 797—is "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty," *i.e.*, "fundamental," *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (internal quotations omitted).

Even if Plaintiff could distinguish precedents like *Jacobson* by redefining the relevant right in those terms, Executive Order 14043 does not concern such rights because it does not force anyone to receive medical care. As explained, federal employees may seek exceptions

---

[9]     Within the past several months, several district courts have also concluded that there is no constitutional right to refuse a vaccine. *See, e.g.*, *Smith v. Biden*, 2021 WL 5195688, at *6-7); *Rodriguez-Vélez v. Pierluisi-Urrutia*, Civ. A. No. 21-1366, 2021 WL 5072017, at *15 (D.P.R. Nov. 1, 2021); *Bauer v. Summey*, Civ. A. No. 21-2952, 2021 WL 4900922, at *10 (D.S.C. Oct. 21, 2021); *Johnson v. Brown*, Civ. A. No. 21-1494, 2021 WL 4846060, at *13 (D. Or. Oct. 18, 2021); *Dixon v. DeBlasio*, Civ. A. No. 21-5090, 2021 WL 4750187, at *8 (E.D.N.Y. Oct. 12, 2021); *Norris v. Stanley*, Civ. A. No. 21-0756, 2021 WL 4738827, at *1-2 (W.D. Mich. Oct. 8, 2021); *Valdez v. Grisham*, Civ. A. No. 21-60783, 2021 WL 4145746, at *5 (D.N.M. Sept. 13, 2021); *Doe v. Zucker*, 520 F. Supp. 3d 217, 251 (N.D.N.Y. 2021).

[10]    Plaintiff does not specify where in the Constitution these rights are located, although he cites a variety of Supreme Court decisions involving abortion and due process. Pl.'s Mem. at 13-14.

from the vaccination requirement based on disabilities (which would include medical conditions) or sincerely held religious beliefs.  If a federal employee does not seek an exception or her exception request is denied, she will not be forcibly vaccinated; she may simply be subject to discipline up to and including removal from federal employment.  *See, e.g.*, *We the Patriots USA*, 17 F.4th at 294 (rejecting a contention that conditioning employment on vaccination amounted to "forcibly vaccinating healthcare workers"); *Klaassen*, 7 F.4th at 593-94 (noting that there are many conditions on university attendance and concluding that COVID-19 vaccination may permissibly be one of them).  Although Plaintiff attempts to distinguish *Jacobson* based on the view that the case involved a state mandate and carried less severe consequences for noncompliance, Pl.'s Mem. at 15-16, he omits the facts that the plaintiff in *Jacobson* was criminally prosecuted and ordered "committed" until he paid the fine, *Jacobson*, 197 U.S. at 13-14.  Here, by contrast, vaccination and disclosure of vaccination status are merely a condition of Plaintiff's employment, subject to legally required exceptions.[11]

Plaintiff is likewise mistaken in his reliance on *Glucksberg*, 521 U.S. 702, *Cruzan ex rel. Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261 (1990), and other cases that he characterizes as establishing a constitutional right "to obtain or reject medical treatment."  Pl.'s Mem. at 13-14.  *Glucksberg* upheld a state-law ban on assisted suicide, rejecting the plaintiff's reliance on cases involving bodily integrity and privacy and holding that the asserted right at

---

[11]    Plaintiff incorrectly argues that the Supreme Court silently abrogated *Jacobson* in more recent abortion decisions.  Pl.'s Mem. at 16 n.4 (citing *Planned Parenthood of Southeast Pennsylvania v. Casey*, 505 U.S. 833, 849 (1992); *Roe v. Wade*, 410 U.S. 113, 153 (1973)).  The Seventh Circuit relied on *Jacobson* in upholding a university's vaccine requirement.  *Klaassen*, 7 F.4th at 593.  The Supreme Court has given no indication that *Jacobson* is anything less than good law, and in any event, the D.C. Circuit and the Supreme Court have both been clear that district courts are bound by precedential decisions until they are expressly overruled.  *See Byrd v. Reno*, 180 F.3d 298, 302 (D.C. Cir. 1999) (noting that because the Supreme Court had "never expressly overruled" its precedent, those cases "remain good law that this court must apply.").

issue—properly construed as the "'right' to assistance in committing suicide"—"is not a fundamental liberty interest protected by the Due Process Clause." 521 U.S. at 728. *Cruzan*, which assumed that a "competent person" had "a constitutionally protected right to refuse lifesaving hydration and nutrition," 497 U.S. at 279, involved the forcible administration of medical treatment, unlike this case, and—as the Supreme Court later emphasized in *Glucksberg*—was "entirely consistent with this Nation's history and constitutional traditions," 521 U.S. at 725. Here, history and constitutional tradition point exactly the opposite way, demonstrating that individuals have no constitutional right to refuse vaccination and related disclosure requirements (much less to do so when the consequence is limited to employment-related discipline).

Moreover, individuals' exercise of the asserted liberty interests at issue in the cases Plaintiff cites did not threaten the health of other persons; by contrast, Plaintiff's insistence that federal employees have a right to remain unvaccinated while continuing their federal employment does just that. Executive Order 14043 requires federal employees to be vaccinated against COVID-19 infection to protect themselves and others in their workplace from the spread of a highly contagious virus. *See, e.g.*, 86 Fed. Reg. at 50,989-90 (explaining, based on "public health guidance," that "the best way to slow the spread of COVID-19 . . . is to be vaccinated"). Consistent with *Jacobson*, workers in a wide range of industries have long been subject to vaccination requirements, which "have been common in this nation." *Klaassen*, 7 F.4th at 593; *see also* Teri Dobbins Baxter, *Employer-Mandated Vaccination Policies: Different Employers, New Vaccines, and Hidden Risks*, 2017 Utah L. Rev. 885. As the Supreme Court explained more than 100 years ago, "[r]eal liberty for all could not exist under the operation of a principle which

recognizes the right of each individual person to use his own, whether in respect of his person or his property, regardless of the injury that may be done to others." *Jacobson*, 197 U.S. at 26.

## 2. *Plaintiff's Argument Concerning the "Unconstitutional Condition Doctrine" Lacks Merit.*

Plaintiff invokes "the unconstitutional condition doctrine," asserting that he is being coerced into relinquishing his constitutional rights to privacy and bodily integrity through the threat of discharge from his federal job. Pl.'s Br. at 16. As explained, however, Plaintiff's underlying constitutional claims are unavailing because the President has the constitutional and statutory authority to require a vaccine for federal employees. But even if the Court were to disagree with that argument, Plaintiff's reliance on the unconstitutional condition doctrine is meritless because even if objecting federal employees "have a hard choice to make, they do have a choice"; the government "is not forcibly vaccinating" anyone. *We the Patriots USA*, 17 F.4th at 294. Indeed, the Supreme Court recently upheld a vaccination requirement that was imposed as a condition of receiving federal funds. *See Biden v. Missouri*, 142 S. Ct. 647. Plaintiff cannot demonstrate that the potential consequences of noncompliance—which are retroactively compensable and therefore do not even satisfy the irreparable- injury requirement for a preliminary injunction, *see Sampson v. Murray*, 415 U.S. 61, 91- 92, 92 n.68 (1974)—are so severe as to transform the Executive Order into a forcible-vaccination directive. That is particularly true given the available mechanisms for employees to seek individual exceptions for medical or religious reasons.

Because a vaccination requirement does not infringe on any fundamental right, the Court must uphold a vaccination requirement so long as it "is rationally related to a legitimate governmental interest." *Waters v. Gaston Cty.*, 57 F.3d 422, 427 (4th Cir. 1995); *see Workman*, 419 F. App'x at 355-56 (concluding that rational-basis scrutiny applied to a requirement that

children be vaccinated to attend school).  Under that framework, the challenged measure "is presumed constitutional," and "[t]he burden is on the one attacking the [measure] to negative every conceivable basis which might support it."  *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 320 (1993) (first alteration in original) (quotation marks omitted); *see also Trump v. Hawaii*, 138 S. Ct. 2392, 2420 (2018) (observing that courts "hardly ever strike[] down a policy as illegitimate under rational basis scrutiny").

Plaintiff questions whether Defendants can demonstrate a compelling interest in a vaccination requirement that applies across the federal workplace.  Pl.'s Mem. at 14-15.  In fact, the government has a compelling interest in the efficient administration of the federal government.  Specifically, the government has "unquestionably a compelling interest" in stemming the spread of COVID-19 among the federal workforce and a "deep and abiding interest" in the effective administration of the federal government.  *Rydie*, 2021 WL 5416545, at *5; *see also Church v. Biden*, Civ. A. No. 21-2815 (CKK), 2021 WL 5179215, at *19 (D.D.C. Nov. 8, 2021) (noting that "courts have consistently held over the past two years that the public interest in '[s]temming the spread of COVID-19' is weighty."); *Altschuld v. Raimondo*, Civ. A. No. 21-2779 (TSC), 2021 WL 6113563, at *5–6 (D.D.C. Nov. 8, 2021) ("[T]his court is guided by the century-old standard that mandatory vaccinations are a suitable expression of the public interest in health and safety").  There can be no serious dispute that the government has a legitimate and compelling interest in preventing the spread of a contagious virus such as COVID-19 and that a requirement that federal workers are vaccinated is rationally related to that interest.  Plaintiff's motion identifies no case holding that a vaccination requirement lacked a rational basis, and there are many cases to the contrary.  *See, e.g., We the Patriots USA*, 17 F.4th

at 293-94 (rejecting the plaintiffs' claim that a vaccination requirement violates substantive due process); *Klaassen*, 7 F.4th at 593-94 (similar); *Workman*, 419 F. App'x at 355-56 (similar).

## CONCLUSION

For the reasons stated above, the Court should grant this motion and dismiss all the claims in the Complaint pursuant to Rules 12(b)(1) and 12(b)(6). If the Court reaches the merits of Plaintiff's Motion for Summary Judgment, the motion should be denied.

Dated:  February 25, 2022

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

_____ /s/ *Paul Cirino* _____
PAUL CIRINO, D.C. Bar #1684555
Assistant United States Attorney
Civil Division
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C.  20530
Telephone: (202) 252-2529
paul.cirino@usdoj.gov

*Counsel for Defendants*