UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON PAYNE,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH R. BIDEN, JR., *et al.*,<br><br>Defendants. | Civil Action No. 21-3077 (JEB) |

## MEMORANDUM OPINION

A jab or a job? Plaintiff Jason Payne is a federal civilian employee who claims that the Executive Order requiring COVID-19 vaccination for covered federal employees unlawfully puts him to this choice. Last fall, President Joseph Biden issued Executive Order 14,043, which mandates vaccinations for executive-branch employees, subject to a medical or religious exception. Payne, who works for the Navy, refuses to be vaccinated and has not applied for an exception. He instead filed this lawsuit against a number of federal agencies and officials, alleging that the Executive Order and the associated agency actions are unconstitutional for several reasons. After Plaintiff moved for summary judgment, the Government filed a Motion to Dismiss. The Court will grant the Government's Motion because the Civil Service Reform Act deprives the Court of subject-matter jurisdiction over this workplace dispute involving a covered federal employee.

1

I.      **Background**

    A.  <u>Legal Background</u>

In September 2021, President Biden issued Executive Order 14,043, which announced a COVID-19 vaccination requirement for many federal employees. <u>See</u> Exec. Order No. 14,043, 86 Fed. Reg. 50,989, 50,989 (Sept. 9, 2021). The Order, which was designed to "ensur[e] the health and safety of the Federal workforce and the efficiency of the civil service," directs the Safer Federal Workforce Task Force to issue guidance on implementation of the vaccination requirement. <u>Id.</u> at 50,989–90; <u>see</u> Exec. Order No. 13,991, 86 Fed. Reg. 7045, 7046 (Jan. 25, 2021) (establishing Task Force).

The Task Force guidance recognizes, consistent with the Executive Order, that federal employees may be entitled to exceptions from the vaccination requirement based on disabilities, including medical conditions, or religious objections. <u>See</u> Safer Federal Workforce, <u>Vaccinations, Limited Exceptions to Vaccination Requirement</u> (last visited May 12, 2022), https://bit.ly/37Ectq2. The guidance further states that federal employees who have not requested an exception should be fully vaccinated by November 22, 2021. <u>See</u> Safer Federal Workforce, <u>Vaccinations, Vaccination Requirement for Federal Employees</u> (last visited May 12, 2022), https://bit.ly/37Ectq2. If an employee refuses to get vaccinated and either has not requested an exception or has had a request denied, then the guidance from the Task Force and the Office of Personnel Management recommends a procedure of progressive discipline, ranging from education and counseling to suspension and termination if the noncompliance persists. <u>See</u> Safer Federal Workforce, <u>Vaccinations, Enforcement of Vaccination Requirement for Employees</u> (last visited May 12, 2022), https://bit.ly/37Ectq2.

B.  Factual and Procedural History

Taking the facts alleged in Payne's Complaint as true, he is a federal civilian employee who works as an engineer for the Office of Naval Research, a component of the Department of the Navy.  See ECF No. 1 (Compl.), ¶ 6.  He has been a member of the civil service for over two decades.  Id., ¶ 2.  Plaintiff alleges that, at some unspecified time in the past, he contracted COVID-19 and recovered.  Id., ¶ 7.  In his view, he thereby "acquir[ed] natural immunity against the disease."  Id.  Payne now "refuses to accept the COVID-19 vaccination mandated by . . . [D]efendants" pursuant to the Executive Order.  Id., ¶ 76.  He has not alleged that he applied for or intends to apply for a medical or religious exception, nor that he so qualifies.  Id.

On October 1, 2021, in keeping with the guidance described above, OPM issued a memorandum directing agencies to require non-excepted employees to be fully vaccinated by November 22, 2021.  See ECF No. 1-5 (Guidance on Enforcement of Coronavirus Disease 2019 Vaccination Requirement for Federal Employees) at 1.  The memorandum also advised that covered employees' "failure to comply will result in disciplinary action up to and including removal or termination."  Id.  That same day, the Defense Department issued a memorandum requiring civilian employees to be "fully vaccinated" by November 22, 2021.  See ECF No. 1-6 (Memorandum for Senior Pentagon Leadership) at 1.  A month later, the Navy issued a memorandum clarifying that "[e]vidence of COVID-19 anti-bodies as a result of previous infection(s) does not satisfy this vaccination requirement; these individuals must also be fully vaccinated."  ECF No. 1-9 (COVID-19 Mandatory Vaccination Plan for Civilian Employees) at 3.  The memorandum reiterated that all civilian employees must be fully vaccinated by November 22, and that they may be disciplined for failure to do so unless the employee has applied for or received an exception.  Id. at 10–11.  By that date, Payne had neither submitted the

required form to his supervisors indicating his vaccination status nor applied for an exception, and he had "advised his direct supervisors that he declines vaccination." Compl., ¶¶ 53–54.

On November 22, 2021 — the day that Plaintiff was required to be fully vaccinated — he filed this lawsuit against Defendants President Biden and a number of other federal officials and agencies. The Complaint alleges that he has already suffered a number of consequences in his job "for refusing vaccination," such as "being forced to wear a mask when those who are vaccinated did not have to wear one," having his official travel subjected to additional scrutiny, being subject to additional COVID-19 testing requirements, and more. Id., ¶ 56. He also alleges that "[D]efendants have promised he will lose his job" for failing to comply with the vaccination requirement. Id., ¶ 2.

Payne's three-count Complaint contends that Executive Order 14,043 and the associated Task Force and agency actions violate the separation of powers and his Fifth Amendment right to privacy, as well as impose an unconstitutional condition on his employment. Id., ¶¶ 60–86. He seeks declaratory and injunctive relief. Id. at 26.

Just two days after filing this lawsuit, Plaintiff filed a Motion for Summary Judgment on each of his three claims. See ECF No. 4 (Pl. MSJ). After Defendants indicated that they planned to file a Motion to Dismiss, the Court ordered them to file a combined Motion to Dismiss and Opposition to Motion for Summary Judgment. See Minute Order of Jan. 3, 2022. The briefing is now complete on these dueling Motions.

## II.   Legal Standard

As the Court need address only Defendants' Motion, it sets out that standard alone. That Motion discusses dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). When a defendant seeks dismissal under Rule 12(b)(1), the plaintiff must demonstrate that the court has

4

subject-matter jurisdiction to hear his claims. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992); US Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). "Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim," the court has "an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). "Absent subject matter jurisdiction over a case, the court must dismiss it." Bell v. U.S. Dep't of Health & Human Servs., 67 F. Supp. 3d 320, 322 (D.D.C. 2014).

In policing its jurisdictional borders, the court must scrutinize the complaint, granting the plaintiff the benefit of all reasonable inferences that can be derived from the alleged facts. See Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The court need not rely "on the complaint standing alone," however, but may also look to undisputed facts in the record or resolve disputed ones. See Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992). Nor need the court accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint or merely amount to legal conclusions. See Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).

Under Federal Rule of Civil Procedure 12(b)(6), meanwhile, a court must dismiss a suit when the complaint "fail[s] to state a claim upon which relief can be granted." In evaluating a motion to dismiss, the Court must "treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation and internal quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006)

(quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678 (internal quotation omitted).  A plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," but the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555–56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

**III.    Analysis**

In his Complaint and Motion for Summary Judgment, Payne argues that Executive Order 14,043 and the agency actions implementing it are unconstitutional for several reasons.  The Government, for its part, contends that because the Court lacks subject-matter jurisdiction over Plaintiff's claims, it should not reach the merits.  More specifically, Defendants' lead position is that the CSRA divests the Court of jurisdiction.  See ECF No. 16-1 (MTD) at 12.  Because subject-matter jurisdiction must "be considered when fairly in doubt," Iqbal, 556 U.S. at 671, the Court begins by examining that issue.  Agreeing with both the Fourth and Fifth Circuits — the only two Courts of Appeals to weigh in on the issue — the Court concludes that it does indeed lack subject-matter jurisdiction because the CSRA precludes challenges of this kind to the Executive Order.  See Rydie v. Biden, No. 21-2359, 2022 WL 1153249, at *1 (4th Cir. Apr. 19, 2022); Feds for Med. Freedom v. Biden, 30 F.4th 503, 511 (5th Cir. 2022).  In the analysis that follows, the Court first examines the relevant background of the CSRA and then explains why the statute forecloses subject-matter jurisdiction here.  Given that result, the Court need not take up Plaintiff's Motion for Summary Judgment.

A. Background on CSRA

"[T]he CSRA 'comprehensively overhauled the civil service system.'" United States v. Fausto, 484 U.S. 439, 443 (1988) (quoting Lindahl v. OPM, 470 U.S. 768, 773 (1985)). Congress designed the statute "to replace the haphazard arrangements for administrative and judicial review of personnel action, part of the outdated patchwork of statutes and rules built up over almost a century that was the civil service system." Id. at 444 (internal quotation marks and citations omitted). The CSRA thus "established a comprehensive system for reviewing personnel action taken against federal employees." Id. at 455. Indeed, it created "an elaborate new framework for evaluating adverse personnel actions against federal employees," which sets forth "in great detail the protections and remedies applicable to such action[s], including the availability of administrative and judicial review." Id. at 443 (cleaned up). Two main sections of the CSRA are particularly relevant to this case. The Court will introduce those sections here and then discuss them in more depth in its analysis of Plaintiff's claims.

First, Chapter 23 governs less severe personnel practices against executive-branch employees. See 5 U.S.C. § 2301 *et seq.* Under that section, covered employees who believe that they have been subjected to a "prohibited personnel practice" can file an allegation with the Office of Special Counsel. Id. §§ 1214(a), 2302. If the OSC finds "reasonable grounds to believe" that a prohibited personnel practice occurred, the practice must be reported to the Merit Systems Protection Board, the employing agency, and OPM. Id. § 1214(b)(2)(B). If the issue is not remedied by the relevant agency, the OSC may petition to the MSPB, which can order corrective action, including attorney fees, back pay, and other compensatory damages. Id. § 1214(b), (g). Judicial review of final orders of the MSPB is available in the U.S. Court of Appeals for the Federal Circuit. Id. §§ 1214(c), 7703(b)(1)(A).

7

The other section of the CSRA of primary relevance here, Chapter 75, governs more severe personnel actions against covered federal employees. Id. § 7501 *et seq.* This section addresses the applicable procedures when an employee challenges a suspension, reduction in pay or grade, or removal. Id. § 7512(1)–(5). Employees challenging a personnel action under this section are afforded a number of procedural rights, including notice, representation by counsel, the opportunity to respond, and a reasoned decision from the agency. Id. §§ 7503(b), 7513(b). Under this Chapter, as under Chapter 23, appeal is generally available to the MSPB, and then from the MSPB to the Federal Circuit. Id. §§ 7503(c), 7513(d), 7703(b)(1)(A).

The critical point is that the CSRA, while providing for review in the Federal Circuit under many circumstances, does not allow review of such personnel actions in federal district court.

B. Application

Against that backdrop, the Court turns to the core issue: does the CSRA divest the Court of subject-matter jurisdiction over this lawsuit? "Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." Bowles v. Russell, 551 U.S. 205, 212 (2007). While federal courts ordinarily have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, when "a special statutory review scheme exists," "it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies." Jarkesy v. SEC, 803 F.3d 9, 15 (D.C. Cir. 2015) (internal quotation marks and citation omitted). Indeed, the Supreme Court has supplied "a framework for determining when a statutory scheme of administrative and judicial review forecloses parallel district-court jurisdiction." Id. at 12 (citing Thunder Basin Coal Co. v. Reich, 510 U.S. 200 (1994)). "Under Thunder Basin's

8

framework, courts determine that Congress intended that a litigant proceed exclusively through a statutory scheme of administrative and judicial review when (i) such intent is 'fairly discernible in the statutory scheme,' and (ii) the litigant's claims are 'of the type Congress intended to be reviewed within [the] statutory structure.'" Id. at 15 (quoting Thunder Basin, 510 U.S. at 207).

The Court addresses these two steps in turn, concluding that both "support the conclusion that Congress intended the statutory scheme to be exclusive." Id. at 16.  As a result, Plaintiff must follow the CSRA's remedial scheme and cannot proceed here.

    1. *Step One*

As the Fourth Circuit recognized in concluding that the district court lacked jurisdiction over an essentially identical challenge to Executive Order 14,403, "The Supreme Court has spoken on step one" of this inquiry, holding that it is fairly discernible that the CSRA is intended to foreclose direct judicial review in at least some circumstances.  Rydie, 2022 WL 1153249, at *4.  More specifically, in Elgin v. Department of the Treasury, 567 U.S. 1 (2012), the Court addressed "whether the CSRA provides the exclusive avenue to judicial review when a qualifying employee challenges an adverse employment action by arguing that a federal statute is unconstitutional."  Id. at 5.  Relying on Thunder Basin, the Court answered in the affirmative, concluding that it was "fairly discernible that the CSRA review scheme was intended to preclude district court jurisdiction over petitioners' claims."  Id. at 23.  Looking first at the text and structure of the CSRA, the Court explained that the "painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions" established that "Congress intended to deny such employees an additional avenue of review in district court."  Id. at 11–12.  The Court went on to state that "[t]he purpose of the CSRA also supports our conclusion that the statutory review scheme is exclusive, even for employees who

9

bring constitutional challenges to federal statutes." Id. at 13.  Here, Plaintiff does not contend, nor does the Court see any basis for believing, that the rule stated in Thunder Basin should be different just because a challenge is to an Executive Order, as opposed to a statute.

Elgin thus controls the first part of the jurisdictional inquiry.  Rydie, 2022 WL 1153249, at *4 ("Thus, Elgin resolves step one."); see also Jarkesy, 803 F.3d at 16.

   2. *Step Two*

The next question, therefore, is whether the circumstances here qualify.  Or, to use the language from Thunder Basin, are Plaintiff's claims "of the type Congress intended to be reviewed within this statutory structure"?  See 510 U.S. at 212.  At this step, "the Supreme Court has provided three factors to consider: (i) whether a finding that jurisdiction is precluded would 'foreclose all meaningful judicial review,' (ii) whether the suit is 'wholly collateral to a statute's review provisions,' and (iii) whether the claims are 'outside the agency's expertise.'"  Miriyeva v. U.S. Citizenship & Immigr. Servs., 9 F.4th 935, 940 (D.C. Cir. 2021) (quoting Thunder Basin, 510 U.S. at 212–13).  The D.C. Circuit has clarified that those considerations do not "form three distinct inputs into a strict mathematical formula.  Rather, the considerations are general guideposts useful for channeling the inquiry into whether the particular claims at issue fall outside an overarching congressional design."  Jarkesy, 803 F.3d at 17.  While the issue is certainly more involved than the first part of the Thunder Basin analysis, the Court similarly concludes that the second part points toward a lack of subject-matter jurisdiction over this suit.

   a. Availability of Meaningful Review

Payne initially contends that "preclusion [of district-court jurisdiction] could foreclose all meaningful judicial review."  ECF No. 20 (Pl. Opp.) at 4.  The Court disagrees.  Plaintiff's

challenge can reasonably be characterized in one of two ways, and under either classification, a finding that this Court lacks jurisdiction would not foreclose all meaningful review.

First, to the extent that his challenge is to a change in his working conditions, the CSRA plainly provides for meaningful judicial review. As referenced, 5 U.S.C. § 2302 defines a "prohibited personnel practice" as any one of fourteen acts that supervisory employees may not take against an employee in a "covered position." Id. § 2302(a), (b). A "covered position" includes "any position in the competitive service," id. § 2302(a)(2)(B), and the competitive service includes "all civil service positions in the executive branch," subject to certain exceptions not relevant here. Id. § 2102(a)(1). Payne works in the executive branch and is thus in a covered position — a conclusion that he does not dispute. See Compl., ¶ 6; Pl. Opp. at 4–13. Nor does he dispute that the vaccination requirement has been dictated by a supervisory employee, who has the "authority to take, direct others to take, recommend, or approve any personnel action." 5 U.S.C. § 2302(b). Of particular relevance here, one such enumerated "personnel action" is a "significant change in duties, responsibilities, or working conditions." Id. § 2302(a)(2)(A)(xii).

There is good reason to think that Plaintiff is bringing a challenge to his working conditions. The Supreme Court has explained, in interpreting Title VII of the CSRA, that the term "working conditions" refers "to the 'circumstances' or 'state of affairs' attendant to one's performance of a job." Fort Stewart Sch. v. FLRA, 495 U.S. 641, 645 (1990). The Fifth Circuit recently relied on this language from Fort Stewart to conclude that "Executive Order 14043 qualifies as a significant change to the circumstances attending the job performance of federal employees." Feds for Med. Freedom, 30 F.4th at 510 n.4. Here, Payne's own allegations indicate that he is challenging a covered change in his working conditions. In addition to

alleging that he "will be disciplined, suspended without pay, and removed from Federal service" because of the Executive Order, see Compl., ¶ 58, Plaintiff further alleges:

> [F]or refusing vaccination he has been improperly stigmatized by being forced to wear a mask when those who are vaccinated did not have to wear one; his official travel is subject to extra scrutiny and additional levels of approval; he is unable to have unrestricted access to his workplace and must produce a negative COVID-19 test for entry when vaccinated workers do not; he was forced to sign an acknowledgement that his failure to be fully vaccinated against COVID-19 by 22 November 2021, or to provide proof of vaccination, "negatively affects the agency's ability to carry out its mission"; and he must personally bear the cost of COVID-19 testing.

Id., ¶ 56. Consistent with the Supreme Court and the Fifth Circuit's understanding of the term in the CSRA, Payne can thus be understood to challenge a "significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A)(xii).

As a result, the CSRA empowers him to attack such a personnel action by filing an allegation with the OSC. Id. § 1214(a)(3). In such a proceeding, the OSC must provide employees "fair and equitable treatment . . . with proper regard for their privacy and constitutional rights." Id. § 2301(b)(2). "The CSRA thus empowers the [OSC] to hear constitutional claims." Rydie, 2022 WL 1153249, at *5; accord Ferry v. Hayden, 954 F.2d 658, 661 (11th Cir. 1992). Then, as outlined, an employee's claims may be presented to the MSPB and eventually to the Federal Circuit. As the Supreme Court has recognized, "[T]he CSRA does not foreclose all judicial review of . . . constitutional claims" when it "directs that judicial review shall occur in the Federal Circuit." Elgin, 567 U.S. at 10. On the contrary, "the Federal Circuit is fully capable of providing meaningful review of [such] claims." Id. In short, insofar as Payne is challenging a change in working conditions, he could avail himself of meaningful judicial review under the CSRA.

12

Before moving on from Chapter 23 of the Act, it is worth noting that another provision of § 2302 may well provide a separate avenue by which Plaintiff could obtain meaningful judicial review. More specifically, an additional enumerated prohibited practice under that section is "tak[ing] or fail[ing] to take any [] personnel action if the taking or failure to take such action violates any law, rule, or regulation." Id. § 2302(b)(12). As a result, to the extent that the Executive Order requires supervisory employees to take action that violates the Constitution, meaningful judicial review is also available under the procedures previously described. See Rydie, 2022 WL 1153249, at *5 ("So even if Executive Order 14,043 required covered employees to engage in a prohibited practice, § 2302(b)(12) provides for meaningful review."); cf. Weaver v. U.S. Info. Agency, 87 F.3d 1429, 1432 (D.C. Cir. 1996) (interpreting § 2302 to conclude that "it is a 'prohibited personnel practice' to take a personnel action that unconstitutionally burdens an employee's speech") (citations omitted).

The second main way Plaintiff's suit could be characterized is as a challenge to a termination decision. Here, too, meaningful review is available, this time under Chapter 75 of the CSRA. As discussed, that section — which applies to Payne for the same reasons that Chapter 23 does, see 5 U.S.C. § 7511(a)(1)(A) — governs the procedures applicable to removals. Id. §§ 7512, 7513. Under Chapter 75, "[a]n employee against whom an action [including removal] is proposed is entitled to" notice, reasonable time to present evidence, legal representation, and a written reasoned decision. Id. § 7513(b). Notice must be provided in writing at least thirty days before the agency acts and must describe the charges against the employee. Id. § 7513(b)(1); see Brook v. Corrado, 999 F.2d 523, 526 (Fed. Cir. 1993). Once the adverse personnel action is taken, moreover, the employee "is entitled to appeal" to the MSPB. Id. § 7513(d). In such an appeal, the employee has the right to a hearing and an attorney. Id.

13

§ 7701(a). Next, as under Chapter 23, the MSPB's final orders may be appealed to the Federal Circuit. Id. § 7703(b)(1)(A).

There can thus be little doubt that, for the same reasons explained in reference to Chapter 23, Chapter 75 of the CSRA provides for meaningful judicial review when an employee is challenging a removal that has already occurred. See Rydie, 2022 WL 1153249, at *6 ("Like that for prohibited personnel practices, the process for challenging termination under § 7513 poses only the risks associated with traditional litigation."). In fact, Payne admits, as he must, that the MSPB "may handle a constitutional challenge to an employee-specific termination." Pl. Opp. at 4. He contends, however, that the CSRA nonetheless does not provide him an avenue for meaningful judicial review because there has been no "predicate personnel action" in this case, and "neither the CSRA nor the MSPB are designed to deal with pre-enforcement constitutional challenges." Id. at 4–5. He is mistaken.

As the Fourth Circuit concluded, Chapter 75 "provides an adequate vehicle to mount a pre-enforcement challenge to termination." Rydie, 2022 WL 1153249, at *6. That is because the statute provides the rights and processes afforded to "[a]n employee against whom an action is proposed." 5 U.S.C. § 7513(b) (emphasis added). The Court concurs with that Circuit's conclusion that "[t]hese processes allow for meaningful review." Rydie, 2022 WL 1153249, at *6. In addition, while § 7513(b) does not define the scope of a "proposed" action, Payne never argues that no such action looms. On the contrary, he alleges that "[D]efendants have promised he will lose his job," and that because the mandate has been "declared a condition of [federal] employment, Mr. Payne . . . will be disciplined, suspended without pay, and removed from Federal service for failing to follow a direct order." Compl., ¶¶ 2, 58 (internal quotation marks

14

omitted). Those allegations suffice to establish that a covered action has been proposed, and he can thus obtain meaningful review before a removal transpires.

Plaintiff's additional attempts to circumvent the CSRA are unpersuasive. For example, he contends that "[b]inding precedent holds that pre-enforcement challenges to government-wide policies do not fall within the CSRA's exclusive jurisdiction." Pl. Opp. at 6. Here, he relies on several decades-old D.C. Circuit cases, which reasoned that while "[it] is one thing to say that when [the CSRA] provides a detailed scheme of administrative protection for defined employment rights, less significant employment rights of the same sort are implicitly excluded," "[it] is quite different to suggest . . . that a detailed scheme of administrative adjudication impliedly precludes preenforcement judicial review of rules." Nat'l Treasury Emps. Union v. Devine, 733 F.2d 114, 117 n.8 (D.C. Cir. 1984); see also Nat'l Treasury Emps. Union v. Horner, 854 F.2d 490, 497 (D.C. Cir. 1988); Nat'l Fed'n of Fed. Emps. v. Weinberger, 818 F.2d 935, 940 (D.C. Cir. 1987). These cases, however, predate both Thunder Basin and Elgin, which held that a statutory scheme bars review when Congress's intention to do so is "fairly discernible." 567 U.S. at 8–10; see 510 U.S. at 207. Indeed, the D.C. Circuit has reasoned in the FLRA context that a related suggestion put forth in Weinberger "cannot survive the Supreme Court's decision in Thunder Basin." Am. Fed'n of Gov't Emps., AFL-CIO v. Trump, 929 F.3d 748, 758 (D.C. Cir. 2019); see Am. Fed'n of Gov't Emps. v. Sec'y of Air Force, 716 F.3d 633, 639 (D.C. Cir. 2013) (indicating in post-Elgin case that CSRA applies to "systemwide challenge to an agency policy interpreting a statute just as it does to the implementation of such a policy in a particular case") (internal quotation marks omitted).

In any event, regardless of the precise scope of the D.C. Circuit's more recent pronouncements about the continued validity of Devine and its progeny, it is well established

that "[c]ontrolling precedent may be 'effectively overruled' . . . if a later Supreme Court decision 'eviscerates' its reasoning." Brookens v. Acosta, 297 F. Supp. 3d 40, 47 (D.D.C. 2018), aff'd sub nom. Brookens v. Dep't of Lab., No. 18-5129, 2018 WL 5118489 (D.C. Cir. Sept. 19, 2018) (internal quotation marks and citation omitted). Such is the case here for the reasons previously discussed. See Rydie, 2022 WL 1153249, at *6 (declining to apply Devine in light of Thunder Basin and Elgin).

Payne next argues that denying jurisdiction here would run afoul of the Supreme Court's pronouncement that "[w]e normally do not require plaintiffs to bet the farm . . . by taking the violative action before testing the validity of the law, and we do not consider this a meaningful avenue of relief." Free Enter. Fund v. Pub. Co. Acct. Oversight Bd., 561 U.S. 477, 490–91 (2010) (internal quotation marks and citations omitted); see Pl. Opp. at 10–12. The CSRA compels no such thing, however. First off, Payne's ability to challenge a change in his working conditions via the OSC allows him to raise his constitutional claims before termination is even proposed. Relatedly, the procedures afforded to a covered employee facing a proposed termination similarly insulate him from having to bet the farm, the ranch, or anything else in order to obtain review. See Rydie, 2022 WL 1153249, at *6. In short, concluding that the Court lacks subject-matter jurisdiction here would not contravene the principle set forth in Free Enterprise. See Jarkesy, 803 F.3d at 20 ("The oddities that led the Supreme Court [in Free Enterprise] to believe that Congress could not possibly have intended the accounting firm to proceed through the administrative route are not present in this case.").

Last, in positing that it would be illogical to have to raise a pre-enforcement challenge via the CSRA's review scheme, Payne gets things exactly backwards. Under his view, a plaintiff who would indisputably have to proceed under the CSRA after suffering an adverse personnel

16

action could circumvent this process and obtain immediate federal-court review by filing suit once the action is proposed but before it is executed. If this were the case, however, the plaintiffs in Elgin could have avoided the CSRA entirely if they had just sued while their adverse personnel actions were proposed or pending. The Court is highly skeptical that Congress "exhaustively detail[ed] the system of review before the MSPB and the Federal Circuit" only to leave such a conspicuous (and unexplained) loophole. See Elgin, 567 U.S. at 11. Indeed, permitting such suits "would reintroduce the very potential for inconsistent decisionmaking and duplicative judicial review that the CSRA was designed to avoid," as well as "create the possibility of parallel litigation regarding the same agency action before the MSPB and a district court." Id. at 14.

In sum, this Court agrees with the Fourth and Fifth Circuits that, under the circumstances of these challenges, finding that jurisdiction is precluded does not foreclose all meaningful judicial review. See Rydie, 2022 WL 1153249, at *7; Feds for Med. Freedom, 30 F.4th at 510.

       b. Wholly Collateral

The second Thunder Basin factor looks at whether a challenge is "wholly collateral to a statute's review provisions." 510 U.S. at 212 (internal quotation marks and citation omitted). This consideration similarly militates against the Court's subject-matter jurisdiction here. Payne contends that his challenge is wholly collateral to the CSRA's review provisions because he is bringing a pre-enforcement "structural" constitutional challenge. See Pl. Opp. at 4. The Court believes otherwise.

In Elgin, the Supreme Court concluded that the plaintiff-employees' challenges were not wholly collateral because their "constitutional claims are the vehicle by which they seek to reverse the removal decisions, to return to federal employment, and to receive the compensation

they would have earned but for the adverse employment action." Elgin, 567 U.S. at 22. The Court also found it significant that "[a] challenge to removal is precisely the type of personnel action regularly adjudicated by the MSPB and the Federal Circuit within the CSRA scheme." Id. Although Payne is not challenging a termination that has already occurred, he is in essence "preemptively challeng[ing] [his] termination" or at least challenging a change in his working conditions. Rydie, 2022 WL 1153249, at *7. In other words, "this case is 'the vehicle by which [he] seek[s] to' avoid imminent 'adverse employment action.'" Feds for Med. Freedom, 30 F.4th at 511 (quoting Elgin, 567 U.S. at 22). Regardless of whether Plaintiff labels his challenge "structural" in nature, at bottom he seeks to avoid being terminated or otherwise disciplined at work for failing to comply with the Executive Order. "Far from a suit wholly collateral to the CSRA scheme, the case before us is a challenge to CSRA-covered employment action brought by [a] CSRA-covered employee[] requesting relief that the CSRA routinely affords." Elgin, 567 U.S. at 22.

As the Fourth and Fifth Circuits similarly concluded, this type of challenge is thus not wholly collateral to the CSRA's review provisions. See Rydie, 2022 WL 1153249, at *7; Feds for Med. Freedom, 30 F.4th at 510–11.

        c.   Agency Expertise

The third and final Thunder Basin consideration — agency expertise — points in the same direction as the first two. On this score, Payne again relies on Free Enterprise and contends that his constitutional claims do not present "the sort of agency fact-bound inquiries" that implicate agency expertise. See Pl. Opp. at 5 (citing Free Enter., 561 U.S. at 491). This argument fares no better than his other attempts to draw parallels with Free Enterprise.

Plaintiff is correct that Free Enterprise reasoned that the "[p]etitioners' constitutional claims are . . . outside the Commission's competence and expertise" in part because the "questions involved do not require technical considerations of [agency] policy." 561 U.S. at 491 (internal quotation marks and citation omitted). That was not the final word on the topic, however, as Elgin proves. See 567 U.S. at 22–23. Yet Payne neglects to grapple with Elgin's discussion of this factor, which cuts strongly against his position. Indeed, as the D.C. Circuit expressly recognized in reconciling the discussions of agency expertise in Free Enterprise and Elgin, "Elgin later clarified . . . that an agency's relative level of insight into the merits of a constitutional question is not determinative." Jarkesy, 803 F.3d at 28.

In Elgin itself, the Supreme Court rejected the federal-employee plaintiffs' argument that their constitutional challenges fell outside of the Board's expertise. See 567 U.S. at 22. The Court explained that the employees' expertise-based arguments "overlook[ed] the many threshold questions that may accompany a constitutional claim and to which the MSPB can apply its expertise." Id. For instance, "preliminary questions unique to the employment context may obviate the need to address the constitutional challenge." Id. at 22–23. The Court observed, moreover, that the "challenged statute may be one that the MSPB regularly construes," or a case may involve "statutory or constitutional claims that the MSPB routinely considers." Id. at 23. In sum, "because the MSPB's expertise can otherwise be 'brought to bear' on employee appeals that challenge the constitutionality of a statute," the Court saw "no reason to conclude that Congress intended to exempt such claims from exclusive review before the MSPB and the Federal Circuit." Id.

The same result obtains here. The relevant agencies likely have experience and expertise relevant to at least some of Payne's challenges. After all, employing agencies and the MSPB no

19

doubt have experience adjudicating employee challenges to a range of personnel actions. As the Fourth Circuit observed in Rydie, it is also possible that the employing agency could moot some of Plaintiff's claims during its review. Relatedly, that agency could determine that taking "action against [Plaintiff] wouldn't 'promote the efficiency of the service.'" Rydie, 2022 WL 1153249, at *8 (quoting 5 U.S.C. § 7513(a)). And if an appeal reaches the MSPB, it could reach the same conclusion, in which case it could order corrective action and obviate the need for federal court intervention. See Feds for Med. Freedom, 30 F.4th at 511.

In light of Elgin's clarification about how to assess whether agency expertise may be brought to bear on a given case, consequently, this factor does not supply a reason to conclude that Plaintiff's claims should proceed outside of the CSRA's review scheme. The Court thus does not have subject-matter jurisdiction over this suit, which it will dismiss.

### IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: May 12, 2022